Good morning, everyone, and welcome. Judge Graber, Judge D'Alba, and I would like to welcome you to Phoenix, and we're really We have two cases that are being submitted today without oral argument. Those are Palomino-Espinosa v. Garland. That case is submitted. And Berry v. Air Force Central Welfare Fund is also submitted. And we're going to hear four cases this morning. We'll take them up in the order that they have been calendared. Two of the appeals have been consolidated for oral argument purposes. First, we'll hear argument in United States v. Warfield and United States v. McKenzie. Each side will have 15 minutes. Mr. Johnshoy, okay, you may begin when you're ready. And if you'd like to reserve time for rebuttal, I'd just ask that you keep track of your own time. Thank you. May it please the Court, my name is Matthew Johnshoy, and I represent the United States.  In both of the appeals being heard today, this Court must interpret Section 724A of the Bankruptcy Code, which is a penalty lien avoidance provision, and decide how to allocate the proceeds of a lien after penalty avoidance. The government argues for an approach that pays the principal portion of a secured debt first, which, in the case of a tax lien, means a tax-first approach. That means the unavoidable tax portion of a tax lien must be fully paid before the avoidable penalty portion of the same lien receives any proceeds. The lower courts in both cases adopted a pro rata approach. They found the text of Section 724A did not answer the question of how to allocate proceeds, and then concluded that the bankruptcy courts were free to decide how to allocate. But their analysis and the way they interpreted the code was flawed, and in any event, the method of allocating proceeds should not be a matter of discretion to be decided case by case. So before turning to the main allocation question, I'd like to first address some disputes that have arisen as to what the main issue on appeal really is. The government believes that this Court is now reviewing partial lien avoidance, that is, the avoidance of just the penalty portions of the liens only. In both the Freeman and the Leike bankruptcies, the trustees in those cases sought only partial avoidance, and the trustees were only granted partial avoidance by the bankruptcy courts. But the district court opinion in Freeman erroneously suggests, in its legal reasoning, that the entire tax liens were avoided. But that's not the case. That was not the relief sought nor the relief granted. And the bankruptcy court's final order is fairly clear on this point. The bankruptcy court's order says that avoidance was only to the extent of the penalties and the interest on penalties, and then it goes on to describe the tax portions of the tax liens as being the, quote, unavoided portion and as, quote, not avoidable. This error is sort of further demonstrated in the district court's own opinion, in its background section, where it refers to the tax liens as nonavoidable. And I think it's further demonstrated in the district court's final holding. It affirms the bankruptcy court's ruling. It affirms partial avoidance while nevertheless endorsing entire lien avoidance. There was just no actual support for the district court's position regarding entire lien avoidance. It wasn't supported by the authorities it relied upon, including the bankruptcy court opinion it was reviewing. So we hope that the court's opinion in Freeman will clarify that only the penalty portions of liens can be avoided. My friend in the answering brief acknowledges that the district court in Freeman says that an entire tax lien was avoided, but he argues for the first time that entire lien avoidance is correct. That's simply not the case. Entire lien avoidance is not consistent with the code. It was not the relief sought and it was not the relief granted, nor was it the relief granted in the Leite case. In the answering brief, my friend also argues that entire versus partial lien avoidance wouldn't make a difference, but that's not the case either. It makes a big difference. If a creditor's lien is avoided in its entirety, then the creditor would no longer be a secured creditor. If you're no longer a secured creditor, you're no longer entitled to a payment with regard to that lien at all. So you still have to have an unavoided lien to be a secured creditor and get paid. So we would ask the court to correct this error or at least not follow the district court's misstatements. The same issue has now also sort of come up in the Leite case, in that in the trustee's brief on appeal in Leite, the trustee suggests that the Leite courts held that the entire tax lien at issue there was avoided, but that's also not the case. The Leite courts only partially avoided the tax liens to the extent of the penalties, and so that's the relief granted in Leite was simply partial avoidance. This may seem like a small issue, but it's in fact very... One of the arguments that I think the trustee makes in the briefs is that the IRS could have assessed the taxes and penalties in separate liens. So is that possible? No, Your Honor, and I think that it gets into a tricky question. It's possible to separately assess taxes and penalties, but it's not possible to separately create a lien. That is, when you assess the tax only, that tax lien also covers the unassessed penalties. Well, I understand that here when you assess the lien, it's covering both unpaid taxes and penalties that are associated with those unpaid taxes. What I'm asking is, you know, the IRS knows what that is. Is it possible to then split those things and file a separate lien for the tax portion and a separate lien for the penalty portion? And again, the answer is no, Your Honor, and it's slightly tricky. If you assess only the tax, you create a tax lien that covers the tax and the penalties. That's the way 6321 reads, that it covers all of the additions to tax and the assessable penalties as well. So if you only assess the tax, you get a lien that covers interest. It covers all of the related amounts as well. You can, however, separately assess the penalty and create an assessment for just the penalty that will create a lien for the penalty, but that does not mean that the assessment for the tax did not already create a lien that covered the penalty. The two aren't the same. So whenever you assess the tax, you create a lien that will also cover penalty. And the penalty accrues later. It accrues over time, just like interest does, right? It's basically similar to a mortgage or, you know, more conventional liens that cover all of the additions that are to come later. So it's true that you can separately assess a penalty, but it's not true that the lien would not also cover the penalty. So this entire versus partial lien avoidance, it's actually an important issue. It's important to ensure that tax liens are not fully avoided, entirely avoided, that the tax portions are still payable, and that future cases are clear on that point. So this Court should find that the common question in these cases is really the threshold question of what to do with the allocation between the unavoided tax portion and the avoided penalty portion of the same lien. Counsel, does it matter if there is, let's say, enough money to cover not quite everything, but not – so, for example, I'm just going to throw out a number. Let's say your tax lien portion is $75,000 and your penalty portion is $20,000, and the sale of the property brings you, I don't know, $80,000. Does that matter versus you just not having enough to cover the entire tax portion or the entire penalty portion? I think it matters in the sense that it determines how much might go to penalties. That is, first you should pay off the principal portion of the secured debt, the $75,000 in tax, and then in your hypo, there's $5,000 left over to go to the secondary penalty. But if you grew the amount of proceeds, you'd, of course, have more left over to go to the secondary amount. So I think the amount of the proceeds matter only in so much as whether it exceeds the amount that should go first to the tax or first to the principal portion of a debt. But regardless of the amount, it's the IRS's position that it all should go to taxes first, and if there's anything left over, then we can, you know, let the penalty avoidance come in if that's what the trustee chooses to do? Yes. The trustee may choose to avoid the penalties sort of as a matter of course, but not yet know how much the proceeds will result. You know, that often happens, right? You think the house is going to sell for more, and then it doesn't. But the first proceeds should go to the principal debt, which in the case of tax liens is the tax debt. And we think that's, you know, that goes back to how do you interpret the code. It's certainly true that the text of the modern code does not explicitly answer the question of how to allocate, but we don't think that means there's no statutory answer. When interpreting — Why shouldn't we look at 724B for the proper allocation method? Well, I think 724B is relevant to understanding 724A, but do you mean look to 724B to allocate for only 724A? Yeah, for the unavoided tax portion. Well, I think 724B does apply to the unavoided tax portion, which is partly why I think 724A is only speaking to penalties. That is, 724A allows the avoidance of penalties. When that's done, if that's not sufficient, if there's — Curse me if I'm wrong, but I thought that the IRS sort of made the argument that 724B is the appropriate method to allocate the unavoided tax portions or unavoided portions of the lien below, but then abandoned this argument on appeal. Are you still — are you still arguing that 724B is the appropriate method to allocate the unavoided portions of the lien? I think I understand the question now, Your Honor. Below, we were making a different argument. We were arguing that wherever there's a tax lien, there will be an unavoided portion, a nonavoidable portion of a penalty lien, and therefore that is the provision that controls. We're not making that argument anymore. But when you're answering a 724A question, it's still important to realize there's still 724B. So 724A sort of gives away the penalty, if anything, right? If there are proceeds to go to the penalty, then that can go to the estate. But that should be informed by 724B, which also is a lien-displacing provision that says, look, if there's not enough after everything else is done, then we'll share the tax lien, too. So when you're interpreting 724A, I think you still have to — you still have to interpret it in light of 724B. And in this case, if this Court holds a tax-first approach, that is not the end of the story, right? Under a tax-first approach, you figure out how to allocate the proceeds, but then it's still possible the trustee will come back for 724B. And when you're reading 724B, it's important to keep in mind 724E as well. That says when B will apply. It says basically once all of the other assets of the estate are exhausted, if you still need more funds to pay these selected groups that are called out in 724B, then you can displace the tax liens and take the principal part of the tax debt to pay these select creditors. Below, we were making a slightly different argument, Your Honor, that we're no longer pursuing on appeal, which is that 724B controls in every case, and you simply go to 720 — you simply go to 724B to show who will get the proceeds of this property. We're not making that argument. So the difference between what you argued below and what you're arguing now is that there needs to be a — the lien is divisible between the voidable and unavoidable portions. You go to A for purposes of taking out the penalty, but all the proceeds — and in this case, that means all of the proceeds go to pay off the tax portion. And if there's any remaining portion from the sale of the property that can satisfy the lien, including the penalty portion, then you use subsection B to allocate the balance. I think that's right, Your Honor. I would say, you know, the thing is, you know, after you've taken the penalty portion of the lien, you won't necessarily know whether there will be any of the classes of creditors left unpaid that 724B, you know, allows this lien avoidance provision for. And it's just — you know, it's important to note that it doesn't allow it for all creditors. Certain administrative expense creditors, certain priority creditors, it's a subset. But if penalty avoidance isn't enough and if all of the other assets of the estate are already exhausted, that's not enough, then you can displace tax liens. But I think the fact that there's this tax — there's this second provision that says, hey, you can get some of the tax too in these events, suggests they're not giving away the tax in A. If anything, they're only giving away the tax in B. I had a question based on what you just said about — and this may be just off base because this is not my area of expertise, but you talked about what sounded like subordinating the tax lien. And if that's true, what effect does subsection E of 724 have, which talks about what has to happen before subordinating a tax lien? Yes, Your Honor. You have to read B and E together. Okay. So E says B essentially doesn't kick in until these conditions are met. And these conditions are you've exhausted the other assets, you've tried your best to get administrative expense through these other mechanisms. That wasn't sufficient. So in a sense, 724E is the more specific that governs the more general of 724B, it sounds like. E is actually a provision that was added later to clarify B. So B and E work together. And I think E just makes it clear that you shouldn't turn to B. You shouldn't be taking the tax principle, displacing tax liens until you've exhausted all other efforts. Got it. To make an analogy, I think 724A is more like the government has given up the dessert, but not the main course, right? The penalties are secondary. They arise secondarily. That's not the main purpose of the liens. And so they've given up the penalties and said, okay, we won't get penalties, and no one else will either until everyone else is paid in full. But in doing that, they're not intending to share the tax. They're not intending to share the principal portion of the secured debt. I'll reserve the remainder of my time for rebuttal. Okay. Thank you. Morning. If it pleases the Court, my name is Terry Dake. I represent the bankruptcy trustees in this case, Robert McKenzie and Lawrence Warfield. I want to start with a couple of the Court's questions. I disagree with government counsel about the answer to the lien question. And in that regard, what I mean is it's tax 101 that when you don't pay your tax, a statutory lien arises under 26 U.S.C. 6321. So I agree with counsel that the lien itself arises. You can't cause the lien to arise at a different point in time. But you can cause the lien to be perfected at a different point in time. The IRS does not have to record one lien that covers the taxes, the penalty, and the interest. Any more than Chase Bank has to record a lien that covers all of its debts at once. Chase can record a lien that secures a $30,000 debt, another $50,000 debt, and a $70,000 debt. IRS can do the same thing. But what you see in the recorded tax liens, and this is where the practice part of this comes into play, is the IRS records a single lien that secures all of those items. And when a trustee or any ---- Well, and it does that, I think, for a reason, which is they would need to, over time, continue to file because penalties for the longer time period that goes by that somebody doesn't pay their taxes and the penalties increase, over time they would have to be filing multiple liens to, as I think what you're saying, to perfect the lien on the increased penalties. So, for example, in the Warfield case, the IRS held 11 years' worth of tax liens. And if it was required to file each of these liens as individual tax lien and penalty liens, I think it would have had to file 22 separate liens. Is that right? Yes and no. They could record one lien that covers all of just the taxes. They don't have to include the penalties and interest in that lien. But if you look at their lien filing, it has separate categories for each of the items that it's securing. It doesn't have to do that. It chooses to do that. So that's where I disagree with counsel. The lien can be perfected. Do you disagree that the IRS would have to continue to file liens over time and that that that would need to occur sort of on a regular basis and obviously also increase the number of liens that would have to be filed? No, I don't, Your Honor. It's no different than when you record a lien for a mortgage. A mortgage has accruing interest. You don't have to rerecord that lien every six months because the interest on the debt changes. The underlying debt accrues. There's notice of them. That's what the purpose of the filing is, is to give notice of the debt to other creditors. And the notice that the IRS is giving says we're taking a lien for the taxes, the penalty, and the interest. The IRS could choose not to take a lien for the penalties in its initial filing. It could make that decision. But it doesn't. It records all of them. So that's where I disagree with counsel. It doesn't have to do that, and it could solve this problem on its own, but it chooses not to. There was also a question about whether or not 724B controls this. Look, the problem is, is even if you take the position that the lien is only partially avoided, it doesn't solve the problem. If the lien is avoided only to the extent of the penalties under 724A, let's say that that's $10,000, and the taxes aren't avoided under that portion of the lien, and that's $50,000. Well, when the property's sold, we still have the same problem. Let's say the property's sold for $40,000. Trustees got part of that under 724A. Government's got part of it under 724B. How do you allocate that? It doesn't solve the problem. Well, let me ask you this. I will repeat my admonition that this is not my area of expertise, but it seems to me that we have a pretty clear message both from the code itself and from the Supreme Court that in Chapter 7, there's sort of an absolute that the priorities, that the creditors must be paid in the order of their priority. The secured creditors first, and government first. The tax lien is in a sort of special category. So your method, the pro rata method that you were successful in obtaining, seems to me to violate that by allowing even unsecured creditors to have a portion before the secured creditors are paid everything they're owed. As I say, this is just sort of a gestalt, but what's wrong with my thinking? Well, first, Your Honor, in your defense, I watched a seminar that Judge Lanza participated in recently on bankruptcy appeals. And he said the most difficult appeals he gets are bankruptcy appeals because the bankruptcy code is so complicated and so intertwined and he gets so little of it that he has to go and educate himself on this as if it was an exam question every time. So I can understand the difficulty that this Court has because you just don't see a lot of bankruptcy and it is so intertwined and complicated. The simple answer to your question is Congress made that decision to take that money and reallocate it. But what is the statutory justification for reducing the value of the unavoidable portion of the tax lien? That's the part that troubles me, which is there is no – I can't find the statutory justification for the pro rata method because it actually reduces the amount of the tax portion that is very clearly unavoidable and that would be paid to the government. Well, and that's the problem, Your Honor. Congress didn't anticipate this issue and didn't address it. But what we have is a situation where you have two holders of one lien now because admittedly, and the government doesn't dispute it, the trustee can avoid the penalty portion. And the government retains the tax – the entitlement to the tax payment. But at the end of the day, there's only one lien. That's all that was ever recorded here. That's what we're talking about is one lien. It's no different than Chase's mortgage. Well, this isn't a problem in the cases where the sale of the property yields enough proceeds to deal with the scenario that you just articulated. And I understand the policy principle and the language that the purpose is to allow the trustee to avoid the penalty portion so that it can stand in the shoes of the lien holders and essentially get a higher priority than the junior lien holders. I understand that. And that works when there are enough proceeds. But in a case where there aren't enough proceeds, shouldn't – we shouldn't just be displacing congressional intent to ensure that the government gets 100 percent of the unavoidable tax lien, right? I don't think we're displacing government intent because the government is the one – Congress is the one who said that the penalties get paid to the estate. How do you explain Section 724E? Well, 724E is easy. 724 says – let's assume that we have a situation where there's no penalties associated with the tax lien. And there's just a tax – there's just a tax lien. Property gets sold. Government's entitled to $50,000 from the sale of the property. What the trustee can do under 724B is come to the court and say, all right, Judge, I've got some creditors I need to pay. I've got wage claimants. And I've also got some administrative expenses. And both of those qualify for payment under 724B. Those are the only two things that qualify for payment. And what the bankruptcy judge says is, well, then let's walk through the rest of Section 724. Mr. Trustee, do you have any other money in this case? Most times the trustee is going to say no. There are no other funds in this case. That's when that money is going to get reallocated. That's when government – when the Congress said, take the tax money that should otherwise go to the IRS and pay those two categories of creditors. It says pay the administrative expenses and pay the wage claimants. Now, if there is other money in the case, then the judge is going to say, I'm sorry, Mr. Trustee, you can't take the government's money until you've exhausted that other money. So 724E just fits in to 724B and tells you when you – but I want to clarify this. So that works only if you consider 724E not to cover the penalty portion. Am I right? Is that your argument? Well, 724E would not apply to an avoided penalty. Well, that's – okay, so I did understand you. Yeah, yeah. So if the trustee gets money from an avoided penalty – Then you lose, right? If we disagree with that. If it applies to the avoided tax lien penalty, the penalty, then you would have to pay the government first. Well, yeah, if what you're saying is 724E applies to 724A, then we're going to have to go back to the bankruptcy court and do the same analysis I just talked about. Is there any other money in the case first? Well, that's why I was thinking that 724E is more specific than 724A, which is the generic provision. So it just seems to me that if 724E applies to the penalty portion, then it supplants any other general rules. That at least makes sense to me. I don't know what I'm missing. Well, that's a different argument than anyone has ever made before, that somehow 724E then trumps the trustee's avoidance rights under 724A. The government has never made that argument, and I frankly have never considered that before. What would be the implications of that analysis in a case where there were sufficient proceeds? Because if we want to retain the policy of having the trustee stand in the shoes of the lien holder to be able to take higher priority than junior lien holders, is that disturbed in any way by interpreting E as the more specific provision that trumps A, I think as Judge Graber is suggesting? I want to understand what the implication of that is in a case where we have enough proceeds to distribute beyond just the government. Well, and make sure I understand your hypothetical. Let's say we sell a piece of property for $100,000, tax lien is $75,000, covers both the penalties and the interest. And I think what the Court is suggesting is even though the trustee, and let's assume the penalty is $25,000, I think what the Court is suggesting is before the estate gets to keep that $25,000 and pay the other unsecured creditors, we have to go through the rest of 724 and get to E and say, well, is there any other money to pay the unsecured creditors? I think that's what the Court's question is. And if that's the question, yes, it changes the analysis, but it doesn't change the result in 99 percent of all the cases, because like in this case, there is no other money. And 724B limits the distribution to only two categories of creditors, administrative claimants, Chapter 7 administrative claimants, by the way, not Chapter 11, and wage claimants. Those are the only two people who can participate in 724B money. So now if you're going to apply 724E to 724A, you're taking money that Congress said, okay, send it to the unsecured creditors. Now it can't go to the unsecured creditors at all. So applying 724E to 724A totally disrupts the statutory scheme, because now you've just wiped 724A off the map. I think I've exceeded my time, and I don't really have anything else. I have about two and a half minutes left, but you don't have to use all your time if you have nothing else to say. The only other thing I wanted to address was 726, because I think that probably leads to some confusion here. 726 doesn't come into play until there's money to distribute to creditors. Let's take a hypothetical. Let's assume you get a piece of property with a $100,000 lien on it. It gets sold for $150,000. We know that what happens to the $150,000 is you've got to pay that first lien. Where does it say that in the bankruptcy code? It doesn't. But we all know that that's the answer. First mortgage gets paid first, the rest of the money then gets distributed. How does that money get distributed? It goes down to the bankruptcy estate and gets distributed under 726. But you've got to start with the liens. Now let's assume that that $100,000 lien is a tax penalty lien, and there's a junior $50,000 lien. What the government is trying to tell you is that if that property is sold, that $100,000 lien drops down and doesn't get paid at all because it's subordinated under 726. It doesn't work that way. This is a lien on a piece of property. If the trustee doesn't avoid that lien, it gets paid to the lien holder. The lien holder isn't somehow subordinated because that's not a distribution under 726. That's just a payment of a lien. But what the government says is if the trustee avoids that lien, now it's subordinated under 726 and the estate gets nothing. It doesn't make any sense. You can't plug 726 into this analysis. 726 comes into play when the estate is distributed. At the end of the case, when the trustee looks at the money that he has, he goes through Section 726. He's already paid the secured debt. And this is where 725 comes into play. You know, I've done bankruptcy work for the better part of 40 years. This is the first time anybody's even brought up 725. I had to look at it the first time they cited it. It's like, what is 725? It says if you've got property that's subject to a lien, you've got to pay the lien holder. We all know that. And so the trustee doesn't pay secured creditors under 726. It never happens. If you look at a trustee's distribution under 726, there's never a payment to a secured creditor. What the trustee pays are the unsecured creditors. And if there's a penalty claim in there, it drops to the bottom and doesn't get any money. But it doesn't have anything to do with tax lien avoidance. Thank you, Mr. Day. Mr. Johnshua, I think you have about a minute and a half for rebuttal. Thank you, Your Honor. Just a couple of points. First, just returning to this, I think that, you know, when you're interpreting the code and when you're interpreting 724A, there's a presumption that precode practice still applies. The precode practice ensured that the tax portion of the tax lien was paid in full, and there's nothing to suggest that that should not still occur. As to the nature of a tax lien, just going back to 6321 and its language, when an assessment is made, right, if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount, that's the amount of the tax, including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition to two, shall be a lien. Most of these accruing categories won't exist or may not exist when you assess the tax. That's why I say the tax lien includes the other things. Those are things to come in the future, particularly interest and accruing penalties. So the nature of a tax lien is just different than other things. It doesn't need to be recorded to be perfected. It comes into being. It's perfected in Co-8 as soon as the assessment is made and the lien arises. The difference is 6323 provides statutory exceptions that allow some people to jump in front of that lien if the lien has not been recorded. But it's perfected and it exists before that. And an assessment only for tax will cover penalties as well. The other thing I wanted to point out to the Court is that with regard to this E question, I think 724E does not apply to 724A by its own terms. 724E says before subordinating a tax lien. Well, the subordination of tax liens only occurs in 724B and not in 724A. But this is one of the reasons why you should not interpret 724A to allow for pro rata allocation. You should not reduce the tax under pro rata allocation before later subordinating the tax lien. If they're going to share the tax, Congress chose to share it in 724B, not in 724A. So is the order of events, then, in your view, the entire tax portion gets paid to the IRS, then if there's anything remaining and it would satisfy the penalty provision, then we go to A and then back to B for distribution of anything beyond that? Yes. And you go back to B in the event that all of the other assets are insufficient. And that's the answer under precode practice, and that should still be the answer today. Thank you. Thank you. This case is now submitted. These cases, the two cases are submitted.
judges: GRABER, DESAI, ALBA